## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ERICA FULTON,** *Plaintiff,* | § § § § | |
| **vs.** | § § | **C.A. NO. 4:17-cv-00528** |
| **UNITED AIRLINES, INC., AND AIR SERV CORPORATION,** *Defendants.* | § § § § § | |

## DEFENDANTS' AMENDED RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND IN THE ALTERNATIVE FOR A NEW TRIAL OR REMITTITUR PURSUANT TO RULE 59

Pursuant to Federal Rules of Civil Procedure 50(b) and 59, Defendants' move for judgment as a matter of law, in the alternative, for a new trial, and in the second alternative for remittitur under Rule 59.

### I. NATURE AND STAGE OF PROCEEDINGS

On January 14, 2019, Plaintiff presented her case. Defendants moved for judgment as a matter of law under Rule 50(a) at the close of Plaintiff's case-in-chief. On January 22, the jury returned a verdict in which it found Defendants United Airlines, Air Serv Corporation, and John Doe negligent and awarded damages of $3.805 million. Defendants file these Rule 50(b) and 59 motions.

### STATEMENT OF THE ISSUE TO BE RULED ON AND STANDARD OF REVIEW

### A. Statement of issue to be ruled on by the Court

1

1. Whether Defendants are entitled to judgment as a matter of law on Plaintiff's negligence claim because there is no legally sufficient evidence for a reasonable juror to find that any actions by Defendants caused Plaintiff's harm.

2. Whether Defendants are entitled to a new trial because the jury's verdict is was contrary to the weight of the evidence.

3. Whether the Court should exercise its discretion to order a new trial unless Plaintiff agrees to a remittitur of the excessive compensatory damages.

## B.    Legal standard of review

### 1.    Renewed motion for judgment as a matter of law

A motion for judgment as a matter of law "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result,'" *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (quoting C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2521, at 240 (2d ed. 1995)), "the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion," *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (en banc), or no more than a scintilla of evidence in the record favors the non-movant. *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) ("Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

"When a case is tried to a jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Cowart v. Erwin*, 837 F.3d 440, 450 (5th Cir. 2016) (internal quotation omitted). Thus, a judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party," *Janvey v. GMAG, L.L.C.*, 913 F.3d 452, 455 (5th Cir. 2019) (quoting *Montano v. Orange County*, 842 F.3d 865, 873 (5th Cir. 2016)), or when "the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Boh Bros. Constr.*, 731 F.3d at 452 (quoting *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004)).

In ruling on a motion for judgment as a matter of law under Rule 50(a) or a renewed motion under Rule 50(b), the court "must draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party and uphold the verdict unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Seibert v. Jackson Cty.*, 851 F.3d 430, 435 (5th Cir. 2017) (internal quotations omitted); *see Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 239 (5th Cir. 2012) (citing *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 336 (5th Cir. 1997) (en banc)).

## 2.  Motion for new trial or remittitur

"Rule 59 of the Federal Rules of Civil Procedure confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). "A new trial may be granted … if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Id*. at 613 (footnotes omitted); *see Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 433 (1996) (observing that trial courts have the power to grant a new trial when the verdict is "against the weight of the evidence").

In determining whether the verdict is against the great weight of the evidence, "the district court weighs all the evidence, but need not view it in light most favorable to the nonmoving party. While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's. '[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial.'" *Id*. (quoting C. WRIGHT, FEDERAL COURTS 634 (4th ed. 1983)) (emphasis added).

If the Court determines that an award is excessive, the Court "may either order a new trial on damages or may give the plaintiff the option of avoiding a new trial by agreeing to a remittitur of the excessive portion of the award." *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988); *see Roman v. W. Mfg., Inc*., 691 F.3d 686, 701 (5th Cir. 2012) ("Implicit in the court's new-trial power is the prerogative,

when damages are too great, to instead secure agreement from the "plaintiff to remit excessive damages." (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935))).

### III.   SUMMARY OF THE ARGUMENT

Defendants seek judgment as a matter of law or in the alternative, a new trial or remittitur. Plaintiff alleges that two employees of Defendant Air Serv Corporation escorted her onto the United Airlines plane via an aisle wheelchair prior to anyone else boarding because Plaintiff is disabled and confined to a wheelchair.  Plaintiff further alleges that as an Air Serv Corporation employee was transferring her from the aisle wheelchair she was in, he dropped Plaintiff on the side interior wall of the plane, causing injury to her right shoulder.  Plaintiff contends that all Defendants are negligent and that such negligence was the proximate cause of her injuries and damages.  At trial, after Plaintiff rested her case-in-chief, Defendants filed a motion for judgment as a matter of law. The motion was taken under advisement by the Court. Defendants herein renew their motion based upon the fact that Plaintiff provided no evidence that the alleged fall on September 4, 2016, caused her rotator-cuff tear to the right shoulder; the medical records are devoid of any evidence suggesting causation, and Plaintiff has not identified any medical experts regarding medical causation.  Further, Plaintiff's medical records actually show that she had a complicated history of chronic pain in the neck, shoulder, and spine long before her alleged fall.

Moreover, the award of $3 million for mental anguish and pain and suffering past and future reflects passion and prejudice and is unsupported by any evidence in this case. Plaintiff proved less than $90,000 in medical expenses and offered no proof of mental anguish or substantial pain and suffering to justify a $3 million award which is roughly a 17:1 to actual damages.

In addition, if the Court denies Defendants' contemporaneous renewed motion for judgment as a matter of law, the Court should grant a new trial because the verdict was against the great weight of the evidence. A new trial is further warranted because the fairness and reliability of the verdict were critically undermined by Plaintiff's inability to prove up reasonable and necessary medical expenses and treatment. Defendants were also prejudiced by opposing counsel's inflammatory arguments in front of the jury during closing statements.  For these reasons, the jury's verdict cannot be allowed to stand.

**IV.  ARGUMENT**

**A.  This Court should grant judgment as a matter of law for Defendants because the evidence is legally insufficient that Plaintiff's injuries were caused by Defendants.**

**1.  Expert testimony was required to prove causation here.**

To succeed on her negligence claim, Plaintiff must establish: (1) Defendants owed her a legal duty; (2) Defendants breached that duty; and (3) the breach proximately caused her injuries.  *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  "To establish causation in a personal injury case, a plaintiff must prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries."  *Burroughs Wellcome Co v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995).  Here, there is a fatal gap in Fulton's causation evidence.

In Texas, the general rule is that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors."  *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007).  Generally, causation can be proved either through lay testimony or through expert testimony. *Hamburger,* 361 F.3d at 884. Where lay testimony is used, the testimony must "establish[ ] a sequence of events which provides a strong, logically *traceable connection* between the event and the condition [to stand as] sufficient proof of causation."  *Id.* (emphasis added).  But lay testimony is probative of causation only when "general experience and common-sense w[ould] enable a layman to determine, with reasonable probability, the causal relationship between the event and the

7

condition." *Id.* (emphasis added) (citing *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 733 (Tex. 1984)).

For example, when a plaintiff has a pre-existing condition—as Fulton did here—lay testimony is not sufficient to establish causation. "[D]etermin[ing] whether or not an accident[,] … as opposed to a pre-existing condition, caused a need for surgery scheduled … later[,]" goes beyond "common experience" and requires expert testimony. *Flagship Hotel, Ltd. v. Hayward,* No. 14-05-00830-CV, 2006 WL 3316981, at *4 (Tex. App.—Houston [14th Dist.] Nov. 16, 2006, no pet.). *Flagship Hotel* is particularly instructive on the need for expert testimony on causation when there is a pre-existing condition. There, like here, the plaintiff "suffered from a pre-existing degenerative spinal condition that could have led to the need for surgery" that occurred months later, making her medical condition— and the medical causation for injuries requiring rotator-cuff surgery—"beyond the purview of general experience and common sense." *Id.* As the court explained,

> A lay jury cannot use its common experience to determine whether or not an accident in May, as opposed to the pre-existing condition, caused a need for surgery scheduled months later. . . . [T]he doctor, a specialist in spinal injuries, could not determine what precipitated the need for surgery with any medical certainty. Considering that Hayward suffered from a pre-existing degenerative spinal condition that could have led to the need for surgery, we hold that this situation was beyond of the purview of general experience and common sense. Thus, Hayward was required to offer some expert testimony on the issue of causation.

*Id.* Thus, "where there is no medical [evidence] linking the alleged negligence to

the injury, a claimant must provide probative evidence, through expert testimony, connecting the injury to the alleged negligence." *Leitch v. Hornsby,* 935 S.W.2d 114, 119 (Tex. 1994).

### 2. Fulton did not present sufficient evidence to prove causation.

Fulton did not come close to meeting her burden of proof on this claim to introduce probative evidence of a causal link between the alleged incident and her rotator-cuff tear. Fulton testified that her injury to the right shoulder resulted from Defendants' negligence. However, Fulton's own testimony is insufficient to establish such proximate cause, particularly where, as here, the record before the Court reflects that Fulton suffered from a pre-existing, degenerative shoulder condition. To carry her burden and survive this motion for judgment as matter of law, Fulton was required to proffer either sufficient medical or expert testimony. *See Flagship Hotel*, 2006 WL 3316981, at *4 (holding that there was no evidence of proximate cause where the plaintiff "suffered from a from a pre-existing degenerative spinal condition that could have led to the need for surgery" and where the expert "could not determine what precipitated the need for surgery with any medical certainty"). Fulton failed to meet her burden.

Dr. Jeffrey Watson, Fulton's surgeon who performed her arthroscopic surgical repair testified at trial that he could not state if the rotator-cuff tear to the shoulder was a result of the alleged fall on September 4, 2016. In fact, he testified that when he first met the Plaintiff on April 14, 2017—approximately eight months after the

alleged incident—had there been trauma to the shoulder because of the passage of time it was impossible for him to determine if the tear was caused by a "blunt force trauma" as described by Fulton.  He made no causal connection between the incident and the damage to Plaintiff's shoulder.

Thus, there was no expert testimony here that the probable—as opposed to the possible—cause of the Fulton's need for surgery was the alleged incident on September 4, 2016.  This serious deficiency in Fulton's proof—which the Court implicitly recognized by sustaining Defendants' multiple objections to Fulton's attempts to circumvent the rule requiring her to designate an expert on medical causation—requires entry of judgment as a matter of law for Defendants.

Indeed, federal courts are in agreement on the need for expert testimony on medical causation to link the claimed injuries to the incident made the basis of the lawsuit, and on the consequences of a plaintiff failure to properly or timely designate experts to establish causation.  In *Casper v. Science Applications Int'l Corp*, the plaintiff brought a negligence cause of action against the defendant for an incident that occurred at plaintiff's employment, with plaintiff claiming the defendant operated a forklift in a reckless manner that caused plaintiff to fall and injure his head.  *Casper v. Sci. Applications Int'l Corp*, No. 5:11-CV-103, 2012 U.S. Dist. LEXIS 118816, at *1 (E.D. Tex. Aug. 1, 2012).  Plaintiff received treatment at a hospital; however, several days later he returned to work, where he fell again, further injuring his head.  *Id.* at *18.  As a result, plaintiff claimed he suffered numerous

injuries including traumatic brain injury. *Id.* at *20. Defendant sought summary judgment on the plaintiff's claims, in part, because plaintiff failed to present sufficient evidence of causation regarding his head injury. *Id.* at *33-34. Defendant argued that plaintiff failed to properly or timely designate experts and did not provide any expert reports; thus, plaintiff had "no legally sufficient evidence to support his claim that his injuries and damages were caused by the [initial] incident." *Id.* at *36. Plaintiff claimed that he did not need expert reports and could just rely on the testimony from his treating physicians. *Id.* at *37. The plaintiff there, however, did not provide any evidence from the treating physicians that could establish causation. *Id.* Therefore, the court rejected plaintiff's argument and granted defendant's motion for summary judgment—stating plaintiff had "not produced expert testimony to create a genuine issue of material fact regarding causation of his injuries." *Id.* at *39.

Here, as in *Casper*, Fulton failed to offer any expert testimony to establish that the alleged incident on September 4, 2016 caused her rotator-cuff tear. In fact, as the Court noted during trial, Fulton never filed her Fed. R. Civ. P. 26(b) expert designations identifying a liability and/or medical expert to opine on causation.

Fulton cannot bridge the fatal gap in the causation evidence with the medical records. Fulton's medical records introduced at trial are nothing more than a reflection of her medical history as described by her. In fact, Dr. Ilahi, Defendants' medical expert testified that a direct causal relationship between the fall and the need

for medical management, interventional pain management or shoulder surgery was never established.  Not one of Fulton's three medical providers that she consulted offered an opinion or rationale as to how or why the rotator cuff tore.

Even Dr. Watson, Fulton's arthroscopic surgeon, testified that the presence of trauma to the shoulder was not evidenced on the MRI taken three weeks after the incident. And the medical records show that although Dr. Tedder and Dr. Frankle each independently examined Plaintiff post-September 4, neither made a causal connection between the alleged incident and the claimed injury for a rotator-cuff tear.  In fact, Dr. Tedder diagnosed Plaintiff's shoulder pain as being caused by a "neck strain," and Dr. Frankle unequivocally stated that her symptoms were not consistent with a rotator-cuff tear.  Fulton's own medical records show that she had extensive radiculopathy from the neck, a debilitating spinal degenerative disease, and neurological impairment including early onset of Alzheimer's disease. These comorbidities complicated Fulton's medical condition and made it impossible for a lay-person to understand or appreciate Plaintiff's ailment post-incident. Thus, under *Guevara*, Plaintiff must have had a medical expert to prove causation for the benefit of the jury. *See Guevara*, 247 S.W.3d at 665; *Flagship Hotel*, 2006 WL 3316981, at *4. Because Fulton failed to introduce any probative evidence of medical causation, this Court should grant judgment as a matter of law for Defendants.

### 3. Plaintiff cannot rely on temporal proximity to establish legal causation.

Fulton's only attempt to prove causation was evidence regarding the timing of the rotator-cuff tear three weeks after the alleged incident on September 4, 2016. Evidence of temporal proximity between an event and subsequent injury can raise a *suspicion* that the complained-of event caused the injury only if the Plaintiff shows that the condition did not appear *before* the complained-of event. *Guevara*, 247 S.W.3d at 668. Even then, mere suspicion falls short of the burden to present legally sufficient evidence of causation. "[S]uspicion has not been and is not legally sufficient to support a finding of legal causation. When evidence is so weak as to do no more than create a surmise or suspicion of the matter to be proved, the evidence is 'no more than a scintilla and, in legal effect, is no evidence.'" *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

Here, Fulton cannot even raise a suspicion that the complained-of event led to her rotator-cuff tear. Fulton's medical records demonstrate that she previously suffered from chronic pain in the shoulder, neck, and spine long before the alleged fall on September 4, 2016—facts that Fulton herself admitted at trial. Furthermore, even the MRI taken three weeks after the incident showed no signs of trauma to the shoulder that would have been consistent with Fulton's alleged complaint. And the surgical repair eight months after the alleged fall by Dr. Watson—who could not state if the rotator-cuff tear to the shoulder was a result of the alleged fall on September 4, 2016—is "too remotely connected with the plaintiff's injury to constitute legal causation." *Byars v. Home Depot U.S.A., Inc.,* 2014 U.S. Dist.

LEXIS 96913, *6 (S.D. Tex. 2014) (citing *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex. 1995), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007)).   Therefore, judgment as a matter of law is appropriate.   In the alternative, because of the fatal deficiency in Fulton's causation evidence, this Court should order a new trial.   *See* Fed. R. Civ. P. 50(b) ("In ruling on the renewed motion, the court may:  (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.").

## B.   The excessiveness of the damages requires either a new trial or the elimination or substantial reduction of the award.

Rule 59 provides that, after a jury trial, a court may grant a new trial on all or some of the issues, and to any party, "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . .."  Fed. R. Civ. P. 59(a) (1)(A). For example, a new trial may be granted if the district court finds the damages awarded are excessive.  *Beckham v. La. Dock Co*., 124 F. App'x 268, 270 (5th Cir.2005) (citing *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir.1985)); *Westbrook v. Gen. Tire & Rubber Co*., 754 F.2d 1233, 1241 (5th Cir.1985).  If this Court determines that an award is excessive, it may either order a new trial on damages or may give the plaintiff the option of avoiding a new trial by agreeing to a remittitur of the excessive portion of the award.  *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir.1988)

When this Court's jurisdiction is based on diversity of citizenship, the court applies a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy. *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008) (citing *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415 (1996)). In Texas, the standard of review for an excessive damages complaint is factual sufficiency of the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998); *see also Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986) (factual sufficiency is the sole remittitur standard for actual damages).

The factual-sufficiency standard is highly deferential, and damages are set aside "only upon a clear showing of excessiveness." *Duff v. Werner Enters., Inc.* 489 F.3d 727, 730 (5th Cir. 2007). An excessive award exceeds the "maximum amount calculable from the evidence." *Cartlon v. H.C. Price Co.,* 640 F.2d 573, 579 (5th Cir. 1981) (citation omitted). After reviewing all of the evidence, courts are permitted to vacate or remit a damage award if it appears to be "so factually against the great weight and preponderance of the evidence to be manifestly unjust." *Forte,* 2011 U.S. Dist. LEXIS 48249, 2011 WL 1740182, at *3 (citation and quotation omitted).

A jury has "broad leeway" to quantify a plaintiff's general damages; nevertheless, "[t]he sky is simply not the limit." *Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421. 1427 (5th Cir. 1988) (quoting *Osburn v. Anchor Labs., Inc.,* 825 F.2d 908, 920 (5th Cir. 1987)). And while "a jury's damages award should not be

disturbed unless it is 'entirely disproportionate to the injury sustained,'" *id.* at 1426 (quoting *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)), there must be some evidence to justify the amount award—even for non-economic damages. *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

### 1. The Court should grant a new trial or suggest a substantial remittitur of the compensatory damages.

The Fifth Circuit has endorsed two competing methods for evaluating the propriety of a jury award: (1) the maximum recovery rule, and (2) the clearly excessive rule. Under the "maximum recovery rule," a court reviewing a jury verdict should remit damage awards that are found to be excessive to the maximum amount the jury could have awarded. *Salinas v. O'Neill,* 286 F.3d 827, 830 (5th Cir. 2002). The maximum amount is determined by comparing the award under scrutiny to awards in other similar cases. *Id.* A multiplier of 50% is then applied to arrive at the maximum recovery amount, and the jury award is remitted to that amount if necessary. *Id.*; *see also Thomas v. Tex. Dep't of Crim. Justice,* 297 F.3d 361, 369 n.8 (5th Cir. 2002).

Under the "clearly excessive" rule, a "damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice." *Eiland v. Westinghouse Elec. Corp.,* 58 F.3d 176, 183 (5th Cir. 1995). Applying this rule, courts have traditionally frowned upon

comparing an award to awards in factually similar cases as a method for determining if an award is excessive. *Johnson v. Offshore Express, Inc.,* 845 F.2d 1347, 1356 (5th Cir. 1988) ("[W]e do not determine excessiveness of damage awards by comparing verdicts in similar cases, but rather we review each case on its own facts.") Rather, this inquiry emphasizes the uniqueness of each case, which must be determined upon its own facts, while recognizing that comparisons may serve as a point of reference. 297 F.3d at 374.

### 2. The jury's damages findings are against the great weight of the evidence.

#### a. Physical pain and mental anguish, both in the past and in the future.

The jury awarded the Plaintiff $2 million for physical pain and mental anguish in the past and $1 million in the future, Dkt. No. 76 at 15, despite there being no evidence to support such an award.

In this diversity-jurisdiction case, Texas "substantive tort law" governs, although the "sufficiency or insufficiency of the evidence in relation to the verdict is 'indisputably governed by a federal standard.'" *Sublett v. Wal-Mart Stores, Inc*., 229 F.3d 1148 (5th Cir. 2000) (quoting *Jones v. Wal-Mart Stores, Inc*., 870 F.2d 982, 986 (5th Cir.1989)).

The leading Texas case on the standard for compensable mental anguish is *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). Indeed, the definition of mental anguish given to the jury quoted the *Parkway* standard:

> Mental Anguish. "Implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation." *Parkway Co. v. Woodruff*, 901 S.W.2ed 434, 444 (Tex. 1995).

Dkt. No. 74.

Under Parkway's substantive tort law standards, for the award of damages to survive a sufficiency challenge, the plaintiff is required to introduce some direct evidence of "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Parkway*, 901 S.W.2d at 444.

Federal standards governing the sufficiency of the evidence for mental anguish damages are the similar. Any award for emotional injury greater than nominal damages must be supported by evidence of the character and severity of the injury to the plaintiff's emotional well-being. *Accord Giles v. Gen. Elec. Co.,* 245 F.3d 474, 488 (5th Cir. 2001); *see also Carey v. Piphus,* 435 U.S. 247, 264 n.20 (1978) (stating that "an award of damages must be supported by competent evidence"); *Brady v. Fort Bend County,* 145 F.3d 691, 719 (5th Cir. 1998) (noting the importance of detailed, non-conclusional statements).

In *Giles,* the court put forth two requirements to prove emotional distress, the first of which is specificity with respect to the alleged injury: "There must be a specific discernable injury to the claimant's emotional state, proven with evidence

regarding the nature and extent of the harm…Hurt feelings, anger and frustration are part of life…and [are] not the types of harm that could support a mental anguish award." *Giles,* 435 U.S. at 247. Damages for emotional distress may be appropriate, however, where "the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation." *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998).

Secondly, the court in *Giles* required more than vague allegations to establish existence of injury. Because "emotional distress [is] fraught with vagueness and speculation, [and] is easily susceptible to fictitious and trivial claims, we must 'scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony.'" *Brady,* 145 F.3d at 719.

In describing the quantum and character of evidence necessary for an award of mental anguish damages to survive a sufficiency challenge, the Texas Supreme Court's *Parkway* decision echoed the same concerns discussed by the U.S. Supreme Court in *Giles*. *See id*. ("Such evidence, whether in the form of the claimants' own testimony, that of third parties, or that of experts, is more likely to provide the fact finder with adequate details to assess mental anguish claims."). Although the Texas Supreme Court "stop[ped] short of requiring this type of evidence in all cases in which mental anguish damages are sought," the court warned that "the absence of this type of evidence, particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages." *Id*.

Here, Fulton offered no proof about "the nature, duration, and severity" of a "high degree of mental pain and distress" that would satisfy the *Parkway* standard from compensable mental anguish.  Nor did she proffer evidence to show "specific discernable injury" to her mental state.  *Giles,* 435 U.S. at 247.  Instead, Fulton proffered only vague generalities about not being able to sleep.  But it was undisputed that Plaintiff had trouble sleeping prior to the alleged incident boarding the United Airlines flight (September 4, 2016) due to her spinal degenerative disease.  Thus, her testimony about having trouble sleeping cannot support the award.  And there was no testimony or other evidence about anxiety, stress, or humiliation.

Thus, the jury's award of $2 million in the past and $1 million in the future for physical pain and mental anguish, must rest solely on its finding for physical pain.  But the evidence of physical pain in the past and future that was purportedly caused by the incident on September 4, 2016 cannot support the $3 million awarded, or, at a minimum, demonstrates that those amounts are excessive. Ms. Fulton testified that she was prescribed narcotic medication to treat her pre-existing conditions. At the time of the incident, she had that medication in her purse and used it. The pain immediately after the alleged incident was such that she took the medication, but it did not prevent her from continuing with her trip in Austin, Texas or required a visit to the hospital. When she returned home, Ms. Fulton had physical therapy for her upper and lower body on September 9, 2016, five days after the alleged incident. In the medical notes from that session, her pain was a minimal 4

out of 10. Also, she testified that after surgery in April 2017, the pain was minimal and that she is currently doing well.  In short, the jury's $3-million award for this condition—even assuming the evidence were sufficient to supply a causal link between the alleged events of September 4, 2016 and Fulton's claimed injuries—is so excessive as to warrant granting a new trial or ordering a remittitur.

The jury may ultimately have accepted the invitation extended by Fulton's counsel during closing argument to send a message to the Defendants through the award of non-economic compensatory damages.  *See* Doc. 87 at 17, 19-21.  While lawyers frequently make a send-a-message type argument when seeking punitive-damages questions, here neither a punitive-damages question, nor a predicate liability question for the imposition of punitive damages, was submitted.  *See, e.g.*, *MMAR Grp., Inc. v. Dow Jones & Co.,* 987 F. Supp. 535, 550 (S.D. Tex. 1997) ("Jurors are always challenged by plaintiffs' attorneys to set punitive damage awards sufficiently high to "send a message" and to cause to the tortfeasor's wrongful conduct to be noticed at the highest corporate levels.").

In closing argument here, Fulton's counsel told the jury that if it didn't care about sending a message, then it should award an amount that fairly compensated Fulton for her injuries, but that if it wanted to send a message, that it should award a multiple of the number that otherwise represented fair compensation.  Doc. 87 at 19-20 (arguing that—to "get[] their attention"—the jury should award "more than a million," and more depending on "how high up the chain" the jury wants the message

to go, while implicitly acknowledging that less than a million would "fairly compensate[s] Ms. Fulton").[1]

While the closing argument by Fulton's counsel pushed the limits—and may have even crossed the line—when he urged the jury to use the soft damage awards to carry a message to the highest corporate levels of the Defendant companies, those unobjected-to remarks do not immunize the jury's damages findings from challenges to the sufficiency of the evidence or the excessiveness of the amounts.

### b.  Disfigurement in the past and in the future.

The jury also found $50,000 for disfigurement in the past. Dkt. No. 76 at 15. Although this figure is dwarfed by the jury's award of $3 million for mental anguish and physical pain, the disfigurement award must be supported by evidence. "Disfigurement has been defined as that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Goldman v. Torres*, 161 Tex. 437, 447, 341 S.W.2d 154, 160 (1960). Although disfigurement awards may be based on surgical scars, the sole evidence here concerning disfigurement is that Dr.

---

[1]Dkt. No. 87 at 19-20 ("What I'm going say is if it's important to you-all that United, that United has this case on their radar, because it's not, these numbers need to add up to something more than a million dollars. They have to add – in order for it to even hit Mr. Simpson's boss's desk, these numbers need to add up to more than a million dollars, and that is if you are interested in getting their attention. If you're not, do what you want back there with these numbers that within a reasonable probability you think it fairly compensates Ms. Fulton. But if you're here to make change, you can make that change in the way that you answer these questions. And the multiplier depends on how high up the chain you want it to go.").

Watson testified to placing a minuscule incision where the arthroscopic scope was inserted. This incision, after healing should have left no scare or mark. Regardless, Ms. Fulton offered no testimony or other evidence about any disfigurement to her shoulder or any other part of her body.

The scars left by arthroscopic surgery are very small.  The jury's award of $50,000 for disfigurement is excessive and should be remitted.

### c.    Paid versus incurred

Plaintiff presented scant documentation to support many of the medical expenses incurred that were purportedly necessary due to the alleged incident. Under Texas law, an affidavit concerning the cost and necessity of services is required.  Tex. Civ. Prac. & Rem. Code § 18.001.  Plaintiff did not comply with this substantive proof requirement.  Instead, Plaintiff sought to "prove-up" some medical expenses through Dr. Watson, her treating physician.   This Court sustained Defendants' numerous objections to this attempt to prove up the expenses this way. In short, Plaintiff failed significantly to meet her burden of establishing which medical costs were reasonable and necessary.

### d.    John Doe

Plaintiff sued John Doe under the doctrine of *respondeat superior* to establish vicarious liability of Air Serv for the alleged negligent acts of Doe in the scope of his employment. John Doe was never identified and was not properly served. No evidence was presented to enable the jury to assign 10 percent responsibility to this

unnamed individual. Because John Doe has not made an appearance in this case, including him in the jury charge was improper, therefore a new trial is warranted to correct this manifest error. At the time of the charge conference, Defendants objected to his inclusion in the charge to the jury, but that objection was overruled. No judgment can be entered against John Doe.

## V.   CONCLUSION

Plaintiff failed to designate an expert that could possibly could have supplied missing, critical testimony of a causal link between the alleged fall she suffered on September 4, 2016 and Fulton's rotator-cuff tear.   Moreover, Plaintiff's medical records are devoid of any evidence establishing that her alleged fall caused her rotator-cuff tear or the need for subsequent steroid injections and arthroscopic surgery.   Without expert testimony or evidence in her medical records, there is no probative evidence in the record to support the jury's finding that the alleged events on September 4, 2016 caused Plaintiff's injuries for which the jury awarded damages, For these reasons, Defendants respectfully request that this Court enter judgment as a matter of law for Defendants due to the lack of legally sufficient evidence to support the jury's verdict.   Alternatively, because there is legally or factually insufficient evidence to support some of the jury's damages findings, as outlined above, and/or the amount awarded, this Court should modify the judgment to delete the affected damages findings, grant a new trial, or suggest a remittitur.

## VI.   PRAYER

Defendants, United Airlines, Inc. and Air Serv Corporation respectfully request that this Court issue an Order granting Defendant's Motion for Renewed Motion for Judgment as Matter of Law pursuant to Fed. R. Civ. P. 50(b) and a conditional order of new trial or remittitur pursuant to Fed. R. Civ. P. 50(c)(1).  In the alternative, Defendants request that the court grant a new trial or remittitur under Fed. R. Civ. P. 59.  Defendants request all other relief the Court deems appropriate.

Respectfully submitted,

ROSE LAW GROUP PLLC

*/s/ Marc Michael Rose*
Marc Michael Rose
Texas Bar No. 24098350
Federal I.D. No. 2943701
777 Main Street, Suite 600
Ft. Worth, Texas 76102
Telephone: (817) 887-8118
Facsimile: (817) 887-8001
E-mail: marc@roselg.com

And

*/s/ Brenton J. Allison*
Brenton J. Allison
GILMAN * ALLISON L.L.P.
Texas Bar No. 24040417
Federal I.D. No. 36863
2005 Cullen Blvd.
Pearland, Texas 77581
Telephone: (713) 224-6622
Facsimile: (866) 543-3643
E-mail: ballison@gilmanallison.com
**COUNSEL FOR DEFENDANTS
UNITED AIRLINES, INC. AND
AIR SERV CORPORATION**

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendants conferred with counsel for Plaintiff, and counsel cannot agree regarding the disposition of these Motions.

*/s/ Marc Michael Rose*
Marc Michael Rose

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2019, a copy of the foregoing document was filed and served electronically through the Court's Electronic Case Filing System.

**_VIA ECF_**
Sean A. Roberts
R. Clive Markland
Anjali Sharma
ROBERTS MARKLAND LLP
2555 North MacGregor, Suite 200
Houston, TX 77004
**COUNSEL FOR PLAINTIFF**

*/s/ Marc Michael Rose*
Marc Michael Rose